IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROSE M. DASS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-815-GMS-SRF |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Plaintiff Rose M. Dass filed this Action against defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner"), on October 30, 2009. (D.I. 2) The plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of July 27, 2009, by Administrative Law Judge ("ALJ") Edward J. Banas, denying her claim for disability income benefits under §216(i) and 223(d) of the Social Security Act. Currently pending before the court are the parties' cross motions for summary judgment. (D.I. 18; D.I. 22) For the reasons which follow, the court recommends affirming the ALJ's determination that plaintiff is not disabled, denying plaintiff's motion for summary judgment (D.I. 18), and granting the Commissioner's cross-motion for summary judgment (D.I. 22).

### II.  BACKGROUND

#### A. Procedural Background[1]

---

[1] The procedural history and factual background are based upon an earlier appeal of the same disability benefits claim involving this plaintiff, which is the subject of an earlier memorandum opinion of the court in *Dass v. Barnhart*, 386 F. Supp. 2d 568 (D. Del. 2005).

1

On February 8, 2002, plaintiff filed an application for disability insurance benefits due to depression, anxiety and pain in the left foot.[2] *Dass v. Barnhart*, 386 F. Supp. 2d at 569. The benefit period in issue spans the date of the alleged onset of disability, August 10, 2000, through the last date plaintiff was insured, December 31, 2006. (D.I. 13 at 367-68) Thus, the plaintiff must establish she was disabled within the period in issue in order to recover disability benefits. The plaintiff claims that "depression/anxiety makes [her] unable to perform daily functions, unable to concentrate and fatigued." *Dass v. Barnhart*, 386 F. Supp. 2d at 569. Plaintiff's claim was denied initially upon review because it was determined that her ailments were not severe enough to prevent her from working. (D.I. 13 at 63)

Following a hearing before an ALJ on October 28, 2003, a decision was entered on November 21, 2003, denying the plaintiff's disability benefits claim for fourteen stated reasons. (*Id.* at 25-26) The ALJ's decision was appealed to this court. On September 16, 2005, this court found that the Commissioner had not adequately supported and explained his decision that the plaintiff is not disabled, and remanded the claim for further consideration. *Dass v. Barnhart*, 386 F. Supp. 2d at 576-77. On remand, the Commissioner was directed to:

(1) develop the opinion of the neuropsychologist, Dr. James S. Langan, as to whether he "conclusively believe[s]" the plaintiff can return to work, determine when such return to work will occur and identify the "sound medical evidence" upon which the conclusion is based;

(2) state whether plaintiff's return to work is contingent upon the plaintiff's participation in therapy and, if so, determine if therapy is sufficient to control the disability;

---

[2] Plaintiff's left foot pain is not in issue because plaintiff expressly rejected in a prior motion for summary judgment her foot pain as a cause of her disability. *Dass v. Barnhart*, 386 F. Supp. 2d at 569.

(3) explain adequately the basis for rejecting the opinions of the plaintiff's primary treating physician, Dr. Alan Seltzer, and accepting Dr. Langan's opinion, assuming the opinions are in conflict; and

(4) consider whether plaintiff is able to function better in the structured setting of her home, as opposed to the work place, in order not to give improper weight to plaintiff's testimony concerning her ability to perform her activities of daily living. *Id.* at 577.

On remand, a subsequent hearing was held on April 20, 2006, and a decision denying plaintiff disability benefits was entered by the ALJ on November 14, 2006. (D.I. 13 at 435-42) A request for review to the Appeals Council was granted, and on June 20, 2008 the matter was remanded to the ALJ. (*Id.* at 445-46) The Appeals Council remanded for reasons similar to those stated in this court's 2005 decision. In particular, the Council was concerned that the ALJ ascribed undue weight to the evidence of plaintiff's daily living activities, and believed the ALJ's decision required further analysis and explanation with respect to the relevant medical evidence. Accordingly, the Appeals Council instructed the ALJ to:

> [1.] Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations. In so doing, evaluate the treating and examining source opinions . . . and nonexamining source opinions . . . , and explain the weight given to such opinion evidence.
> [2.] [C]ompare the claimant's maximum residual functional capacity with the physical and mental demands of her past relevant work.

(*Id.* at 446)

A third hearing was held on January 6, 2009. On July 27, 2009, plaintiff was denied disability benefits in a decision issued by ALJ Banas, for the following reasons:

(1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

(2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 10, 2000 through her date last insured of December 31, 2006 (20 CFR § 404.1571).

(3) Through the date last insured, the claimant had the following severe impairments: Post traumatic arthritis of the left ankle, depression, anxiety, and somatoform disorder (20 CFR § 404.1520(c)).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR pt. 404, Subpt. P, App. 1 (20 CFR §§ 404.1525-26).

(5) After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b), involving low level, skilled tasks at an SVP level of 5 or below.

(6) Through the date last insured, the claimant was capable of performing past relevant work as a verification clerk in the banking industry. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR § 404.1565).

(7) The claimant was not under a disability, as defined in the Social Security Act, at any time from August 10, 2000, the alleged onset date, through December 31, 2006, then date last insured (20 CFR § 404.1520(f)).

(*Id.* at 369-77) The Appeals Council subsequently declined to review the ALJ's decision and it became the final decision of the Commissioner and is the subject of the pending appeal. (D.I. 2)

### B. Facts Developed at the Third Administrative Law Hearing

The plaintiff did not appear at the January 6, 2009 hearing and, therefore, no new facts were established.

### C. Vocational Evidence

Vocational expert Christina Beatty-Cody appeared at the January 6, 2009 hearing but did not testify. (D.I. 13 at 367, 497) Thus, the ALJ relied on vocational evidence elicited at prior hearings, from Drs. Andrew B. Beale (*Id.* at 55-59) and James Ryan. (*Id.* at 377) Dr. Beale testified at the October 28, 2003 hearing that a bank clerk position is classified as sedentary and low-level skill, having a Specific Vocational Preparation ("SVP") level of five. (*Id.* at 56, 377, 442) Dr. Beale stated that a person with similar limitations as the plaintiff could engage in various forms of work including, but not limited to, a mail clerk and an entry level library clerk.

In addition, the plaintiff could perform simple cleaning jobs. (*Id.* at 56-57) Dr. Ryan testified at the April 20, 2006 hearing that a bank clerk position is sedentary and semiskilled. (*Id.* at 377, 442)

### D. Medical Evidence

The ALJ consulted medical expert Dr. C. David Blair, a licensed psychologist, to testify at the January 6, 2009 hearing. (*Id.* at 497-98) Dr. Blair did not conduct his own independent evaluation of the plaintiff. His expert opinions are the product of his review of the relevant medical evidence, including the reports and opinions of Drs. Seltzer and Langan. (*Id.* at 498-99, 510-11) Dr. Blair opined, "[Dr. Langan's] report is actually the only really solid database [sic] report that we have. The rest of what we have is fairly observational and by the patient's report." (*Id.* at 499-500) Dr. Blair explained,

> [i]t appears that [plaintiff] is presenting with, and this may be what she feels or what she feels other want to see or what she wants others to see or some combination of those things, a lot of somatization, meaning that she is focused on physical functioning, her ails and her problems.

(*Id.* at 500) Dr. Blair noted "contradiction . . . in the rather [large] number of complaints that Dr. Seltzer [] endorsed" (*Id.* at 502), that the plaintiff "exaggerate[d] her complaints" (*Id.* at 503), and opined that plaintiff's "actual potential functioning level, what her brain can do, is higher than what she tested at." (*Id.* at 502) Dr. Blair ultimately concluded, in agreement with Dr. Langan's opinion, that the plaintiff is "capable of very basic work-like activities . . . in a reasonably supportive environment . . . with concurrent psychotherapy." (*Id.* at 506-07)

### III. STANDARD OF REVIEW

The court will uphold the Commissioner's decision if it is supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Substantial evidence means less than a preponderance of the evidence, but more than a

mere scintilla of evidence. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Likewise, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In determining whether substantial evidence supports the Commissioner's decision, the court may not review de novo the Commissioner's findings. *See Monsour*, 806 F.2d at 1190-91. The Third Circuit has explained that a

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., evidence offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The inquiry, therefore, is not whether the court would have made the same determination, but instead, whether the Commissioner's conclusion is reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing court would have decided the case differently, the court must defer to the Commissioner and affirm the decision if it is supported by substantial evidence. *Monsour*, 806 F.2d at 1190-91.

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act provides insurance benefits "to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 42 U.S.C. § 423(a)(l)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(l)(A). A claimant is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). In order to qualify for disability insurance benefits, a claimant must establish she was disabled prior to the date she was last insured. 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

To determine whether a claimant is disabled under the Act, the Commissioner is required to perform a "five-step sequential evaluation process." 20 C.F.R. § 404.1520.

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. If a claimant is found to be engaged in substantial activity, the disability claim will be denied. In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. The claimant bears the burden of demonstrating an inability to return to her past relevant work.
> If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step.

*Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999) (citations omitted). If the Commissioner finds at any point in the sequential process that the claimant is disabled or not disabled, he will not review the claim further. *See* 20 C.F.R. § 404.1520(a)(4).

### B. The ALJ's Analysis and Plaintiff's Appeal

The first three steps of the ALJ's sequential analysis are not in dispute. (D.I. 19 at 12) Plaintiff contests step four. (*Id.*) As explained above, step four of the sequential evaluation process requires the ALJ to determine whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [her] impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). The pending appeal concerns whether substantial evidence supports the ALJ's finding that the plaintiff had the requisite RFC to perform light work as defined in 20 C.F.R. 404.1567(b), involving low-level, skilled tasks at an SVP level of 5 or below and, thus, does not qualify for disability benefits.

The only new evidence introduced at the January 2009 hearing was Dr. Blair's medical expert testimony, which was based on his review of the plaintiff's medical records. (D.I. 13 at 497-99) Dr. Blair's testimony adequately addresses the deficiencies for which the court remanded the case, according to its earlier opinion.

### 1. The ALJ's Consideration of Dr. Seltzer's Medical Opinions

The court remanded this matter, in part, because the ALJ, in his initial decision, ignored or rejected without explanation Dr. Seltzer's medical opinions. *Dass v. Barnhart*, 386 F. Supp. 2d at 576. In the decision at issue, the ALJ adopted Dr. Blair's medical opinions over those of Dr. Seltzer, and relied upon Dr. Blair's testimony and the record to explain the basis for discrediting Dr. Seltzer's opinions.

No updated records were provided from the plaintiff's treating physician, Dr. Seltzer. It is undisputed that Dr. Seltzer, in December 2000, diagnosed the plaintiff with moderate major

depression. *Id.* at 572. Dr. Seltzer determined the plaintiff had a global assessment of functioning ("GAF")[3] score of 58, indicating moderate psychological symptoms. *Id.* The plaintiff saw Dr. Seltzer 29 times from December 2000 through September 2003. *Id.* It is also undisputed that the plaintiff's GAF sores, as determined by Dr. Seltzer, varied widely over the treatment period. For example, in a 2000 report, Dr. Seltzer noted a GAF score as high as 85, reflecting absent or minimal psychological symptoms. *Id.*

Dr. Seltzer completed a Mental Impairment Questionnaire in October 2003. (D.I. 13 at 333-38) He calculated a GAF score of 55, reflecting moderate psychological symptoms. *Dass v. Barnhart*, 386 F. Supp. 2d at 573. Dr. Seltzer, however, assessed the plaintiff in the categories of "fair" and "poor to none" for 13 of the 16 skills required for unskilled work.[4] *Id.* The plaintiff admits the only explanation for these low scores was the phrase "chronic moderately severe depression," written in Dr. Seltzer's notes. (D.I. 19 at 6-7; D.I. 13 at 336)

Dr. Blair pointed out internal inconsistencies in Dr. Seltzer's reports. For example, Dr. Seltzer concluded in one of his reports, without any supporting data, that the plaintiff has a loss of intellectual ability amounting to 15 IQ points; however, in the same the report, Dr. Seltzer answered "no" to the question, "does your patient have a low IQ or reduced intellectual functioning?" (D.I. 13 at 502-03, 335) In addition, Dr. Seltzer's opinion of the plaintiff's inability to work is inconsistent with his detailed progress notes, which demonstrate improvement over the plaintiff's course of treatment, with the occasional need for adjustments to the plaintiff's medications and dosage amounts. (*Id.* at 339-60)

---

[3] GAF measures psychological, social and occupational functioning levels of an individual. American Psychiatric Ass'n., *Diagnostic & Statistical Manual of Mental Disorders*, at 32 (4th Ed. 1994).

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

Dr. Seltzer's notes indicate the plaintiff improved steadily from May 2001 through December 2001. (*Id.* at 358-60) On October 4, 2001, the plaintiff was "not feeling as bad [or] as irritable." (*Id.* at 358) On June 3, 2002, the plaintiff described herself as "much more relaxed." (*Id.* at 352) Her mood was "fairly good" and her affect "mildly depressed." (*Id.*) On April 1, 2003, she was "feeling somewhat better." (*Id.* at 347) By July 14, 2003, the plaintiff described "feeling much better," "coping with stress better," and sleeping well. (*Id.* at 341) The last of Dr. Seltzer's treatment notes in the record are dated September 23, 2003, and indicate that the plaintiff described herself as "too nervous to work."[5] (*Id.* at 339)

According to Dr. Blair, "Dr. Seltzer felt that [the plaintiff] can't do anything, and I mean anything. . . . I can't imagine how [the plaintiff] could even have come to a hearing. That's the problem with a report like [Dr. Seltzer's]. It's not consistent with what we've seen elsewhere." (*Id.* at 505-06) As a result of the inconsistencies and absence of supporting data in Dr. Seltzer's notes, Dr. Blair concluded that Dr. Seltzer's opinions are based upon the plaintiff's self-reporting, as opposed to medically acceptable clinical and laboratory techniques. (*Id.* at 501-06, 508)

Other evidence of record likewise supports Dr. Blair's conclusion that Dr. Seltzer's medical opinions are merely a product of the plaintiff's self-report. For example, in June 2002, and February 2003, state agency physicians examined the plaintiff and completed Psychological Review Technique Forms.[6] (*Id.* at 208-25, 290-306) The physicians assessed mild restrictions in daily living activities, and mild to moderate difficulties in maintaining social functioning and

---

[5] The record contains no evidence of mental health care treatment from October 2003 through November 2004. In December 2004, the plaintiff returned to Total Care Physicians, where she treated until December 2005. (D.I. 13 at 484-94)

[6] The ALJ did not rely on the state agency physicians' medical reports in his 2003 decision denying plaintiff's DIB claim. *Dass v. Barnhart*, 386 F. Supp. 2d at 573 n.5.

concentration. (*Id.*) *See also Dass v. Barnhart*, 386 F. Supp. 2d at 572-73. The physicians determined individually that the plaintiff is not significantly limited in 16 of the 20 mental activities examined, such as the ability to interact appropriately with the general public, ask simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distraction or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (D.I. 13 at 221-22, 303-04) The physicians' findings contradict those of Dr. Seltzer, and support the conclusion that Dr. Seltzer's medical opinions are based on the plaintiff's self-report.

Dr. Seltzer's findings concerning the plaintiff's subjective complaints also are unsupported by subsequent medical records relating to plaintiff's treatment with Total Care Physicians from December 2004 through December 2005. (D.I. 13 at 484-94) Although medical records from Total Care Physicians indicate that plaintiff complained generally of anxiety and difficulty sleeping, there are no documented clinical findings or mental status examinations in the records to verify her complaints objectively. Moreover, the medical records contain no complaints of anxiety or depression by the plaintiff after July 28, 2005. (*Id.* at 489-94)

In light of the foregoing, it was reasonable for the ALJ to adopt Dr. Blair's medical opinions and reject Dr. Seltzer's. The ALJ is required to give a treating source opinion great weight only when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." *Fargnoli*, 247 F.3d at 40. Similarly, in order to be credited, allegations of pain and other subjective complaints must be consistent with objective medical evidence. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). In the present case, the evidence

of record does not support Dr. Seltzer's findings. Furthermore, the plaintiff's subjective complaints are inconsistent with objective medical evidence. Thus, the ALJ reasonably rejected Dr. Seltzer's medical opinions because they are neither supported by the relevant medical evidence nor consistent with the record as a whole.

Notwithstanding the fact that ALJ justifiably rejected Dr. Seltzer's medical opinions and credited those of Dr. Blair, it is necessary to discuss the adequacy of Dr. Blair's opinions. "When an ALJ relies on a non-treating physician's opinion over that of a treating physician, the non-treating physician's opinion must be examined for how well it takes into account and explains the pertinent evidence in the record." *Neff v. Astrue*, 875 F. Supp. 2d 411, 420 (D. Del. 2012) (citing *Gonzales v. Astrue*, 357 F. Supp. 2d 644, 661 (D. Del. 2008)). The ALJ consulted Dr. Blair as a medical advisor to help resolve "really specific medical issues that the court wanted [him] to . . . look into in this case." (D.I. 13 at 497, 498) Dr. Blair evaluated thoroughly all of the relevant medical evidence, and provided detailed testimony regarding the reports of Drs. Langan and Seltzer. (*Id.* at 497-522) The fact that Dr. Blair was able to point out various inconsistencies in Dr. Seltzer's reports indicates that Dr. Blair scrutinized the record closely. In addition, Dr. Blair supported his opinions with the evidence of record. Thus, the ALJ acted appropriately in adopting Dr. Blair's opinion over that of Dr. Seltzer.

### 2. The ALJ's Consideration of the Plaintiff's Daily Living Activities

The ALJ properly considered plaintiff's daily activities as one factor in determining the extent to which the plaintiff's symptoms limit her capacity to work. *See* 20 C.F.R. § 404.1529(c). Pursuant to 20 C.F.R. § 404.1529(c)(3), "daily activities" is a factor relevant to a claimant's symptoms. The ALJ must carefully consider any information a claimant submits about her

symptoms, including "how the symptoms may affect [her] pattern of daily living" because that information is an "important indicator of the intensity and persistence of [the] symptoms." *Id.*

Contrary to plaintiff's argument, the ALJ complied with the court's remand order to the extent he was required to weigh properly the evidence of plaintiff's daily activities. (D.I. 19 at 12) Notably, the court's instruction to "consider whether plaintiff is able to function better in the structured setting of her home as opposed to the work place" was based on the valid concern that the ALJ, in his 2003 decision, gave undue weight to the evidence of plaintiff's daily living activities.[7] *Dass v. Barnhart*, 386 F. Supp. 2d at 577. In other words, because the ALJ's 2003 non-disability finding was based, in large part, on evidence of plaintiff's daily living activities, the court instructed the ALJ to consider whether plaintiff's abilities might deteriorate in a setting outside of her home, such as the work place. In the context of the ALJ's 2009 decision, however, the court's instruction is a non-issue because the ALJ gave little weight to the plaintiff's daily living activities, and instead "afford[ed] significant weight to Dr. Blair's credible testimony." (D.I. 13 at 375) The ALJ took into consideration all of the relevant medical evidence, unlike in earlier decisions. (*Id.* at 372-77) Finally, as explained above, the ALJ was entitled to consider plaintiff's daily activities, pursuant to 20 C.F.R. § 404.1529(c), as one of several factors in assessing her capacity to work.

### 3. The ALJ's Finding that Plaintiff Could Return to Work

---

[7] According to the court,
> [t]he ALJ pointed to other evidence to "reinforce" the view that plaintiff is not disabled. That evidence was claimant's reports of her daily activities[] .... It seems the ALJ rejected Dr. Seltzer's medical judgment on the basis of the ALJ's observation of the plaintiff at the hearing and the plaintiff's testimony. This is an insufficient basis for rejecting medical opinions. . . . [T]he court is concerned that these factors were given improper weight. The ALJ must also consider plaintiff's ability to function outside the home, as opposed to inside the home.

*Dass v. Barnhart*, 386 F. Supp. 2d at 577.

13

Substantial evidence supports the ALJ's finding that the plaintiff could return to work.

In its prior opinion, this court reviewed thoroughly the report of the board certified clinical neuropsychologist, James Langan, Psy.D., issued in March of 2002. *Dass v. Barnhart*, 386 F. Supp. 2d at 572, 576-77. Dr. Langan's opinions were the primary bases upon which the prior ALJ relied in determining that the plaintiff was not disabled. *Id.* at 576. The court, however, was not convinced that Dr. Langan's opinion was inconsistent with Dr. Seltzer's, and if it was inconsistent, the court was not satisfied with the ALJ's basis for accepting it over Dr. Seltzer's report. *Id.* at 576-77. Moreover, the court found that Dr. Langan's report did not constitute substantial evidence of conflicting medical opinions, and only by "selective abstraction" could one conclude Dr. Langan believed that the plaintiff could return work. *Id.* at 576. Therefore, the court remanded the matter so that the ALJ could more clearly articulate whether Dr. Langan believes, among other things, that the plaintiff could return to work; if so, the sound medical evidence for his opinion; when he believes the plaintiff could return to work; whether the plaintiff's return to work is contingent on concurrent therapy, and whether such therapy is sufficient to control her disability. *Id.* at 577.

Unlike Dr. Seltzer, Dr. Langan had the plaintiff undergo neuropsychological tests that consumed a full day. *Id.* at 572. (D.I. 13 at 199-207) The plaintiff does not dispute that the testing demonstrated her learning and memory skills were in the average range. (D.I. 19 at 5) Personality testing produced an invalid profile because plaintiff's responses showed strong evidence of symptom exaggeration, as did the self-report inventory relating to emotional health ("MMPI-2"), which was consistent with "somatization, anxiety, depression, paranoia, relationship stress and low motivation." (D.I. 13 at 205) The MMPI-2 validity indicators "suggested the profile on the MMPI-2 was exaggerated." (*Id.*)

Dr. Langan believed that, based on objective testing, the plaintiff could perform the tasks of her past work, despite her strong belief to the contrary. (*Id.* at 206) According to Dr. Langan, the plaintiff's biggest impediment to returning to work was her pervasive belief that she could not "do what [was] being asked of her." (*Id.*) Dr. Langan assessed a GAF score of 70, indicating only mild symptoms.[8] (*Id.* at 207) Notwithstanding the foregoing, Dr. Langan believed that the plaintiff's return to work should begin on a part-time basis, gradually increasing over time, and that the plaintiff should continue to be seen by a psychiatrist and psychotherapist. (*Id.* at 206) She required "support" during the initial phases of re-entering the work force. (*Id.*)

The court found previously that Dr. Langan's opinions were "not conclusive enough" and, therefore, difficult to accept as conflicting directly with Dr. Seltzer's opinions. *Dass v. Barnhart*, 386 F. Supp. 2d at 576-77. In the present case, however, Dr. Blair's testimony resolves the court's uncertainty because it relies on specific medical evidence to explain the inconsistencies and lack of reliability in Dr. Seltzer's opinions. Specifically, Dr. Blair testified, "I think there's a little bit of contradiction internally in [Dr. Seltzer's] own report and then of course, between [Dr. Langan's] and his." (*Id.* at 504)

> I think [the plaintiff has] been very reactive to the way she feels she was treated . . . [and] her perception seems to be that she was treated badly. . . . Looking at what we have I note Dr. Seltzer felt that she can't do anything, and I mean anything. When you have all those poor [sic]. I can't imagine how she could even have come to a hearing. That's the problem with a report like that. It's not consistent with what we've seen elsewhere.

(*Id.* at 505-06) "[A]s I have mentioned earlier I think Dr. Seltzer's report is more a reflection of what [the plaintiff] has told him. . . . And so it's a little bit over the top."[9] (*Id.* at 509)

---

[8] *See Dass v. Barnhart*, 386 F. Supp. 2d at 572.

[9] Dr. Blair explained that Dr. Seltzer "did note some things that [the plaintiff] said, but there's not actually a lot of information here [in Dr. Seltzer's progress notes]. There's not a lot of depth to [them]." (D.I. 13 at 518)

Dr. Blair's expert testimony, in addition to discounting Dr. Seltzer's opinion, supports the ALJ's determination that the plaintiff could return to work. According to Dr. Blair,

> it sounds like [the plaintiff is] presenting herself as being helpless and kind of histrionic and I can't do things and reactive, and part of the difficulty is that she hasn't had opportunities to help herself kind of wean back into a work situation and [Dr. Langan] suggested that like a part-time, halftime thing would be helpful. . . . I think [the plaintiff] is capable of very basic work-like activities. I think it's going to have to be in a reasonably supportive environment . . . . And I would suspect . . . because she's been in this kind of helpless position for so long that she would have to enter a situation like that somewhat gradually and kind of get used to it.[10]

(*Id.* at 506-07) Dr. Blair opined that plaintiff's reentry into the workforce would take "six months to a year . . . with concurrent psychotherapy." (*Id.* at 507)

In view of the foregoing, the ALJ's finding that the plaintiff could return to her former employment is supported by the record. As the Third Circuit has explained, the relevant inquiry is not whether this court would have made the same determination, but instead, whether the conclusion is reasonable. *Brown v. Bowen*, 845 F.2d at 1213. In the present matter, the ALJ's conclusion is reasonable because substantial evidence supports the determination that the plaintiff could return to her former employment.

## V. CONCLUSION

For the foregoing reasons, the court recommends affirming the ALJ's decision, finding upon substantial evidence the plaintiff is not entitled to disability benefits. Thus, plaintiff's motion for summary judgment should be denied, and the Commissioner's cross-motion for summary judgment should be granted.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

---

[10] Dr. Blair testified that there is no evidence in the record to support the inference that plaintiff's return to work would cause decompensation. (*Id.* at 511-12)

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order in Non-Pro Se Matters for Objections filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 18, 2013

_____
Sherry R. Fallon
United States Magistrate Judge